UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Abu B. Kargbo

    v.                                           Civil No. 11-cv-130-SM

James O'Mara et al.


**REPORT AND RECOMMENDATION**

Before the court is pro se plaintiff Abu B. Kargbo's initial complaint (doc. no. 1), an amendment (doc. no. 9), and addenda to the complaint (doc. nos. 8 and 12).[1]  The court construes those documents, in the aggregate, to constitute the "complaint" for all purposes in this case.  Kargbo asserts claims against the Hillsborough County Department of Corrections ("HCDC"), HCDC Superintendent James O'Mara, and the following HCDC officers:  Lt. Riley; Sgts. Antilles, C. Brown, and Gordon; Officers Adam, J. Barbera, Caisse, Fitzpatrick, Meurin, Michaud, Plumpton, Richard, Ross, and others whose names Kargbo does not recall.  The complaint (doc. nos. 1, 8, 9, and 12) is before the court for preliminary review to determine if Kargbo has stated a claim upon which relief can be granted.  See 28 U.S.C. § 1915A;

---

[1] In an Order on this date, the court has granted Kargbo's motion to amend the complaint (doc. no. 9).

United States District Court, District of New Hampshire Local Rule ("LR") 4.3(d)(2).

## Standard of Review

Under LR 4.3(d)(2), when an incarcerated plaintiff commences an action pro se, the magistrate judge conducts a preliminary review.  The magistrate judge may issue a report and recommendation after the initial review, recommending that claims be dismissed if the court lacks subject matter jurisdiction, the defendant is immune from the relief sought, the complaint fails to state a claim upon which relief may be granted, the allegation of poverty is untrue, or the action is frivolous or malicious.  See id. (citing 28 U.S.C. § 1915A & Fed. R. Civ. P. 12(b)(1)).  In conducting a preliminary review, the magistrate judge construes pro se pleadings liberally, to avoid inappropriately stringent rules and unnecessary dismissals.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pleadings liberally in favor of pro se party); Castro v. United States, 540 U.S. 375, 381 (2003).

To determine if a complaint states any claim upon which relief could be granted, the court applies a standard analogous to that used in reviewing a motion to dismiss filed under Fed.

R. Civ. P. 12(b)(6). The court decides whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009).

To make this determination, the court employs a two-pronged approach. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). The court first screens the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (citations, internal quotation marks and alterations omitted). A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed. Id. The second part of the test requires the court to credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then to determine if the claim is plausible. Id. The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of

Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555-56 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citations and footnote omitted)).

Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950 (citation omitted). In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits." Ocasio-Hernández, 640 F.3d at 13. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Id.

### Background

At all relevant times, Kargbo was a pretrial detainee at the HCDC, in Manchester, New Hampshire, awaiting trial on rape charges. Kargbo has asserted facts in the complaint that relate to his claims of excessive use of force and race or national origin discrimination. Kargbo has asserted that a number of officers used prejudicial, racist, or xenophobic terms,

including "nigga" and "rapist," when they ordered him to do certain tasks or denied requests that he made of them.

Kargbo also asserts that officers who allegedly used excessive force against him on June 6, 2010, also used racial slurs and prejudicial remarks.  Specifically, on that date, while Kargbo was sleeping in his cell, sometime before 7:00 p.m., after Kargbo had argued at dinner time with Officer Michaud, Sgt. C. Brown and Officer Meurin came to Kargbo's cell, called him a "nigga" and a "rapist," and told him to kneel down on the floor and put his head against the wall.  Kargbo alleges that he was kneeling down, as ordered, when the officers pushed his head, hard, against the wall.  Kargbo asserts that the officers took him from his cell, dragged him across the day room floor, sprayed his eyes with pepper spray, pushed him against the wall in the day room, beat him, then put him in a shower for two seconds, on the way to cell 2098.  Kargbo's whole face was burning, and there was redness around his eyes.

Once alone in cell 2098, Kargbo started to kick the cell door and yell that his handcuffs were too tight.  Nurse Church was summoned, examined Kargbo, and "cleared" him at 7:05 p.m. Kargbo remained in the segregation cell afterwards, and continued to kick the door.  Kargbo alleges that about forty

minutes later, Officer Plumpton came up to the cell, called Kargbo a "nigga" and a "rapist," told him to stop kicking the door, then laughed as he slammed the cell door.

About fifteen minutes later, shortly before 8:00 p.m., Officers Meurin, Caisse, Plumpton, and Sgt. C. Brown came into the segregation cell and put Kargbo in a restraint chair for transport to cell 2099. Plumpton pulled the waist strap, shoulder straps, and leg straps so tightly that Kargbo asserts he could hardly take a breath, and Meurin and Caisse choked Kargbo's neck, which left him unable to breathe for a period of time, while they transported him in the chair. At 9:10 p.m., about an hour later, Lt. Riley directed that Kargbo could be removed from the restraint chair as he was "exhibiting acceptable behavior."

Kargbo has asserted that he asked for grievance forms at HCDC several times, but each time he asked, officers have refused to give him any forms. Kargbo asserts that because he did not have the forms, he was unable to file grievances relating to any of the incidents he describes in the complaint (doc. nos. 1, 8, 9, and 12).

**Claims**

The complaint (doc. nos. 1, 8, 9, and 12) asserts the following claims[2]:

1.  Defendants are liable under 42 U.S.C. § 1983 for using excessive force against Kargbo in violation of his Fourteenth Amendment right to due process, in that, on June 6, 2010:  (a) Sgt. C. Brown and Officer Meurin pushed Kargbo's head forcefully against a wall, pepper-sprayed his face, dragged him across the floor, and beat him while taking him from his own cell and transporting him to a segregation cell; (b) Officer Plumpton put Kargbo in a restraint chair and tightened the straps excessively, so that Kargbo felt he could not breathe; and (c) Officers Meurin and Caisse choked Kargbo's neck, so that Kargbo was unable to breathe for a period of time while they transported him to another cell.

2.  Defendants are liable to Kargbo under 42 U.S.C. § 1983, for discriminating against Kargbo on the basis of his race and national origin, in that:  (a) certain officers used derogatory terms and threats in speaking with Kargbo, in violation of his Fourteenth Amendment right to equal protection; and (b) Sgt. Brown and Officers Meurin and Plumpton used racial epithets while subjecting Kargbo to excessive force on June 6, 2010.

---

[2]The claims identified herein shall be construed to be the claims raised in the complaint for all purposes in this case. If Kargbo disagrees with this identification of his claims, he must properly file an objection to this Report and Recommendation or a motion to amend his complaint.

**Discussion**

I.  Excessive Force

    A.  Elements of the Claim

The "Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n.10 (1989); see also Surprenant v. Rivas, 424 F.3d 5, 15 (1st Cir. 2005). That right is at least as protective as the Eighth Amendment's guarantee that convicted prisoners not be subjected to excessive force intended maliciously or sadistically to cause harm. See Burrell v. Hampshire Cnty., 307 F.3d 1, 7 (1st Cir. 2002).

The applicable Eighth Amendment standard is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). In asserting an excessive force claim, a prisoner need not allege that he has sustained a serious or significant injury in order to obtain relief. See Wilkins v. Gaddy, ___ U.S. ___, ___, 130 S. Ct. 1175, 1178 (2010). The relevant factors in evaluating an excessive force claim are: the need for force; the relationship between that need and the amount of force applied; the extent of any injury inflicted; the "threat reasonably perceived by the

8

responsible officials"; and the "efforts made to temper the severity of a forceful response." Hudson, 503 U.S. at 7 (internal quotation marks and citation omitted).

### B. Cell Extraction

Kargbo asserts that he was subjected to excessive force when Officer Meurin and Sgt. Brown took him from his cell and pushed his head forcefully against the wall. As to the relevant factors, the complaint suggests that there was no need for any substantial force. The argument with Michaud had ended some time before, and Kargbo had since gone to sleep. According to Kargbo, he was complying with the officers' orders. The officers' hateful language, as described by Kargbo, could be found to manifest their prejudicial motivation or malicious intent to punish Kargbo. The lack of any exigency or need to restore order and the suggestion of bad faith warrant the conclusion that the complaint states a plausible claim that Kargbo was subjected to excessive force during the cell extraction. Accordingly, in an Order on this date, the court has directed service of the excessive force claim relating to the cell extraction against Officer Meurin and Sgt. C. Brown.

C.   Transport to Cell 2098

Kargbo also asserts that immediately after taking him from his cell, Officer Meurin and Sgt. Brown used excessive force while transporting Kargbo to a segregation cell, in that they allegedly pepper-sprayed his eyes, showered him for only an instant, pushed him against a wall, dragged him across the floor, and beat him.  The use of force alleged, together with the officers' use of racial slurs and epithets, states a plausible claim that Officer Meurin and Sgt. Brown used excessive force in bad faith during that transport.  In an Order issued this date, the court has directed service of this claim against those officers.

D.   Restraint Chair and Choking

Kargbo has asserted that he was subjected to excessive force when, as a result of Officer Plumpton's tightening the straps of a restraint chair, and Officers Meurin and Caisse choking him, Kargbo could not breathe for a period of time while they transported him to cell 2099.  Applying the relevant factors, the court concludes that the complaint states a plausible claim of excessive force against those officers.  If the facts alleged in the complaint are taken as true, the officers' response to Kargbo's yelling and kicking a segregation

cell door exceeded the force necessary to restore order and could be found to manifest malice or bad faith.

Sgt. Brown is alleged to have been involved in putting Kargbo into the restraint chair for transport to cell 2099, and the complaint, liberally construed, charges him with failing to intervene when other officers choked Kargbo by pressing against his neck and pulling the restraint chair straps too tight. The court reasonably infers from the facts alleged that Kargbo's distress in being unable to breathe was obvious to Sgt. Brown, and that Brown had a "realistic opportunity" to intervene. Cf. Calvi v. Knox Cnty., 470 F.3d 422, 428 n.3 (1st Cir. 2006) ("bystander-officer who has a realistic opportunity to prevent the use of excessive force by a fellow [police] officer [in violation of plaintiff's Fourth Amendment rights] may in certain circumstances be held liable for a failure to intervene" (citing cases)).

The allegations regarding Brown's immediate involvement in assisting in the restraint of Kargbo, his animus manifested by his use of epithets, and his failure to take action when he had an opportunity to do so, states a plausible claim under section 1983 for a violation of Kargbo's Fourteenth Amendment due process rights. Accordingly, the court has directed service of

the claims relating to the restraint and choking of Kargbo, as to Sgt. Brown and Officers Caisse, Meurin, and Plumpton.

At to Lt. Riley, however, the allegations concerning the restraint chair do not state a plausible claim of excessive force. Lt. Riley was not alleged to have been present when the relevant acts occurred; his involvement is characterized only as authorizing Kargbo's release from the chair about an hour later. Such conduct cannot be characterized as action or inaction that "led inexorably" to any subordinate officer's unconstitutional conduct. Maldonado v. Fontanes, 568 F.3d 263, 275 (1st Cir. 2009) ("supervisory liability lies only where an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor exists such that the supervisor's conduct led inexorably to the constitutional violation" (internal quotation marks and citation omitted)). Accordingly, the court should dismiss the claims relating to the restraint chair and choking as to Lt. Riley.

II. Discrimination

    A. Elements of Equal Protection Claim

The Fourteenth Amendment prohibits states from denying persons in their jurisdiction equal protection of the laws. See

U.S. Const. amend. XIV. The court, evaluating a discrimination claim asserted under the Equal Protection Clause, looks to "'(1) whether the [plaintiff] was treated differently than others similarly situated, and (2) whether such difference was based on an impermissible consideration, such as race.'" Lopera v. Town of Coventry, 640 F.3d 388, 402 (1st Cir. 2011) (citation omitted). "A plaintiff must show that the defendant 'selected . . . a particular course of action at least in part because of, not merely in spite of, its adverse effects' upon a protected group." Id. "'[I]ntent may be 'inferred from the totality of the relevant facts.'" Id. (citations omitted).

### B. Use of Epithets and Threats Alone

Kargbo has asserted that a number of officers at HCDC used racial slurs and bigoted remarks when they spoke with him. Specifically, Sgt. Gordon allegedly told Kargbo, "you are not from this country," when he ordered Kargbo to go into a cell. Officers J. Barbera and Richard allegedly called Kargbo a "nigga" and a "rapist," and threatened to smash his head against a wall. Further, when Kargbo asked Sgt. Antilles for extra out-of-cell time, Antilles refused, according to Kargbo, calling Kargbo a "rapist" and a "nigga," and threatened to send him to "PC Max" if he did not go to his cell. After describing those

officers' use of racial slurs and threats, Kargbo added to the complaint the bald allegation that Officers Adam, Davis, Fitzpatrick, Michaud, Ross, and others whose names he cannot remember also "discriminated" against him.

If true, Kargbo's allegations charge certain officers with base behavior, in their use of hateful, racial slurs that are inappropriate in any setting.  Those allegations of verbal harassment and threats, per se, however, are insufficient to state any plausible claim under section 1983 for a violation of constitutional rights.  See DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000) ("The use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution.  Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." (footnote and citations omitted)).

Similarly, the scant, conclusory allegation of discrimination on the basis of race asserted against Officers Adam, Caisse, Davis, Fitzpatrick, Michaud, Ross, and other officers whose names Kargbo cannot recall, is unsupported by pertinent factual allegations showing that they harbored any impermissible animus or subjected Kargbo to any discriminatory

treatment, and therefore, the complaint fails to state an equal protection claim against those officers. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d at 12 (claim parroting elements of cause of action may be dismissed)  For those reasons, the court should dismiss Kargbo's claims of discrimination, as asserted against Sgt. Gordon and Sgt. Antilles, and Officers Adam, Barbera, Caisse, Davis, Fitzpatrick, Michaud, Richard, and Ross.

C.   Epithets and Excessive Force

The complaint, liberally construed, also asserts that Sgt. C. Brown and Officers Meurin and Plumpton violated his rights to equal protection, in that their use of excessive force against him was racially motivated.  The allegations set forth in the complaint, regarding those officers' use of hateful, racial slurs, form the basis of a plausible factual allegation that they harbored a race-based animus. Dewalt, 224 F.3d at 612 n.3 (use of "racially derogatory language" is "strong evidence of racial animus, an essential element of any equal protection claim").  The allegations charging them with using racially derogatory terms in the context of using excessive force are therefore sufficient to state a plausible claim that Kargbo was treated worse than others similarly-situated because of his race.  See Scott v. City of Peoria, No. 09-cv-1189, 2011 WL

673988, *4 (C.D. Ill. Feb. 17, 2011) (inmate who alleged that he was subjected to racially-motivated beating, manifested by officers' use of racial epithets, stated plausible claim of violation of right to equal protection). In an Order on this date, the court has directed service of an equal protection claim against Sgt. C. Brown and Officers Meurin and Plumpton for using excessive force against Kargbo because of his race.

As to Officer Caisse, however, the facts alleged in the complaint do not give rise to any reasonable inference that his actions were racially-motivated. Caisse is not alleged to have uttered any race-based epithets or remarks, and no other facts alleged in the complaint present any reason for the court to infer such a motivation. Accordingly, the court should dismiss the equal protection claim asserted against Officer Caisse.

III. Supervisory and Municipal Liability

Supervisory liability under section 1983 lies only where the "supervisor's conduct led inexorably to the constitutional violation." See Maldonado, 568 F.3d at 275. A similar limitation applies for finding municipal liability. See Connick v. Thompson, ___ U.S. ___, ___, 131 S. Ct. 1350, 1359 (2011) (municipalities may not be held vicariously liable under section 1983); Young v. City of Providence ex rel. Napolitano, 404 F.3d

4, 25 (1st Cir. 2005) ("it is only when the governmental employees' 'execution of a government's policy or custom . . . inflicts the injury' and is 'the moving force' behind the constitutional violation that a municipality can be liable" under section 1983 (citation omitted)).

Nothing in the complaint shows any grounds for finding supervisory or municipal liability as to the claims that this court has deemed viable.  Kargbo has not stated any facts to support a claim, under Maldonado, 562 F.3d at 275, that O'Mara or any other supervisor's conduct or inaction "led inexorably" to subordinate officers using excessive force or engaging in impermissible race discrimination in extracting Kargbo from his cell, transporting him to a segregation cell, or putting him in a restraint chair and choking him.  Furthermore, Kargbo has not shown that the execution or implementation of any municipal policy caused officers to engage in the allegedly unconstitutional conduct.  See Young, 404 at 25.  Accordingly, any claim of supervisory or municipal liability in the complaint (doc. no. 1) should be dismissed.

Conclusion

The court, in an Order this date, has directed service of certain excessive force claims asserted against Sgt. C. Brown and Officers Meurin, Plumpton, and Caisse and certain equal protection claims asserted against Brown, Meurin, and Plumpton. The court should dismiss all of the other claims asserted in the complaint (doc. nos. 1, 8, 9, and 12). Included within the order of dismissal should be all claims asserted against: the HCDC; James O'Mara; Lt. Riley; Sgt. Gordon and Sgt. Antilles; and Officers Adam, Barbera, Davis, Fitzpatrick, Michaud, Richard, and Ross; and the equal protection claim asserted against Officer Caisse.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011) (citing United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008)); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to

review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge

December 22, 2011

cc: Abu B. Kargbo, pro se

LBM:nmd