UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Abu B. Kargbo,
    Plaintiff

    v.                                          Case No. 11-cv-130-SM
                                                  Opinion No. 2013 DNH 170
Sergeant Carl Brown;
Sergeant Todd Gordon;
Officer Joshua Caisse;
Officer Jonathan Plumpton;
Officer David Archambault;
and Woodrow Weatherby,
    Defendants


**O R D E R**


Abu Kargbo is an inmate at the Northern New Hampshire Correctional Facility.  He claims that while he was a pre-trial detainee at the Hillsborough County House of Corrections (also known as the "Valley Street Jail"), he was, on two separate occasions, subjected to unreasonable and excessive force motivated by racial animus.  He brings this action seeking damages for the violation of various constitutionally protected rights.  See generally 42 U.S.C. § 1983.  Defendants move for summary judgment, asserting that Kargbo failed to properly exhaust his claims relating to the first incident and, in any event, that none of his constitutionally protected rights were violated during either of the two incidents identified in his complaint.

For the reasons discussed, defendants' motion for summary judgment is granted in part and denied in part.

**Standard of Review**

When ruling on a motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted). Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine dispute as to a material fact has been proved, and "summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).

**Background**

The factual allegations set forth in Kargbo's complaint and various amendments are discussed in detail in the Magistrate Judge's two reports and recommendations (documents no. 15 and 28). They need not be recounted in detail. It is sufficient to note that Kargbo claims that on November 6, 2010, and again on September 30, 2011, various defendants violated his constitutionally protected rights to due process and equal protection by assaulting him and employing excessive force against him.[1]

**Discussion**

I. <u>Exhaustion and the November 6 Incident</u>.

42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act of 1995 ("PLRA"), provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility <u>until such administrative remedies as are available are exhausted</u>.

---

[1] Because Kargbo was a pretrial detainee at the time of the incidents that give rise to his complaint, his excessive force claim is governed by the Fourteenth, rather than the Eighth, Amendment. See <u>Ruiz-Rosa v. Rullan</u>, 485 F.3d 150, 155 (1st Cir. 2007); <u>Surprenant v. Rivas</u>, 424 F.3d 5, 18 (1st Cir. 2005).

42 U.S.C. § 1997e(a) (emphasis supplied). The Supreme Court has held that section 1997(e) requires an inmate to exhaust all available administrative processes before filing a federal suit that relates to the conditions of his or her confinement, even if some or all of the relief the inmate seeks cannot be obtained through those administrative processes. Booth v. Churner, 532 U.S. 731, 734 (2001) ("The question is whether an inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money. We hold that he must.").

Subsequently, the Supreme Court made explicit that which was implicit in Booth: the phrase "with respect to prison conditions," as used in the PLRA's exhaustion provision, incorporates within its scope not just conditions generally affecting the inmate population, but also discrete incidents affecting only a single individual.

> [T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

Porter v. Nussle, 534 U.S. 516, 532 (2002). And, most recently, the Court held that the PLRA exhaustion requirement requires "proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

4

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91 (footnote omitted). So, to properly exhaust available administrative remedies, a prisoner must file grievances (and appeals) on the forms, in the place, and within the time limits prescribed by the prison's administrative rules. See Jones v. Bock, 549 U.S. 199, 218 (2007).

Importantly, however, an inmate's failure to properly exhaust administrative remedies does not deprive this court of subject matter jurisdiction over his or her claims. Instead, it is an affirmative defense that must be pled and proved by the defendant. See, e.g., Bock, 549 U.S. at 216; Casanova v. Dubois, 289 F.3d 142, 147 (1st Cir. 2002).

Here, the parties appear to agree that Kargbo properly exhausted available administrative remedies relating to the incident on September 30, 2011, but failed to exhaust those remedies as to the November 6, 2010, incident. Accordingly, say defendants, Kargbo is precluded from pursuing his federal claims relating to the latter. In response, Kargbo says he should be excused from complying with the PLRA's exhaustion requirement

because corrections officials refused to provide him with the necessary forms to properly grieve the November 6 incident.

As this court has previously observed, it is possible to imagine scenarios in which an inmate of ordinary firmness could be so thwarted in his efforts to avail himself of the grievance process, that his failure to exhaust available administrative remedies might be excused. See, e.g., Robinson v. Gordon, 2010 WL 1794701 *3, 2010 DNH 76 (D.N.H. May 5, 2010). This, however, is not one of those cases. The record evidence - including Kargbo's own deposition testimony - establishes that he filed numerous administrative grievances after the November 6 incident. Indeed, one of those grievances alleged that he was, once again, the victim of excessive force. Plainly, then, corrections officials were making the necessary forms available to Kargbo for him to pursue his administrative remedies - even when Kargbo was alleging that corrections officers had engaged in severe misconduct. See, e.g., Affidavit of Superintendent David Dionne (document no. 85-2) at para. 4 (chronicling at least six separate times following the November 6 incident on which Kargbo filed administrative grievances). See generally Deposition of Abu Kargbo (document no. 89-1).

It is beyond dispute that Kargbo was well-versed in the administrative grievance process and availed himself of that process quite frequently. It is also plain that when he wished to file an administrative grievance, he was able to obtain the necessary forms to do so. Why he chose not to grieve the events related to the November 6 incident is entirely unclear. But, he certainly could have done so if he wished. And, perhaps more importantly, defendants have established that he was not thwarted in his efforts to obtain the requisite forms, nor did they otherwise prevent him from exhausting available administrative remedies related to that incident.

Because plaintiff failed to fully exhaust available administrative remedies relating to the November 6 incident, the PLRA precludes him from pursuing his constitutional claims related to that incident in this forum. As to those claims, then, defendants are entitled to summary judgment.

II. <u>Excessive Force</u>.

What remains of Kargbo's complaint is an excessive force claim against Sergeant Gordon and Officers Wetherbee and Archambault. Whether the force they used against Kargbo was excessive depends on whether it "was applied in a good-faith effort to maintain or restore discipline, or maliciously and

7

sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). In addition, "[a]n officer who [was] present at the scene and who fail[ed] to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance." Gaudreault v. Salem, 923 F.2d 203, 207 n.3 (1st Cir. 1990).

As construed by the Magistrate Judge, Kargbo's complaint alleges that on September 30, 2011, he was assaulted when officers were moving him from Unit 2A to Unit 2B at the Valley Street Jail:

> Kargbo alleges that, at the time, Sgt. T. Gordon called Kargbo a "rapist bastard," and said, "Why did you like to rape women?", and also told Officer Wetherbee to punch and kick Kargbo. Wetherbee complied by punching and kicking Kargbo's stomach. During the alleged assault, Officer Archambault restrained Kargbo's hands, and Sgt. Gordon choked Kargbo.

Report and Recommendation (document no. 28) at 5-6. Kargbo repeated those allegations at his deposition. See Deposition of Abu Kargbo, at 236 (testifying that while his hands were cuffed behind his back, "Sergeant Gordon was holding me and, you know, Archambault was holding me and Wetherbee went like this (gesturing) and punched me in my stomach and elbowed me with his knee in my stomach.").

The defendants involved in the September 30th incident paint a very different picture of the events of that evening.  In short, they say Kargbo was disruptive, combative, threatening, and using profane language - all of which prompted the decision to transfer him to a different cell block.  Defendants acknowledge using minimal force to restrain Kargbo, but say that once he was handcuffed, they transported him to Unit 2B without incident.  Moreover, they say Kargbo subsequently apologized for his outburst and explained that he was angry about having forgotten to sign up for med call.  See, e.g., Incident Report of Sergeant Gordon (document no. 85-4) at 2; Incident Report of Officer Moran (document no. 85-4) at 4.

All acknowledge that some level of force was used against Kargbo during the course of handcuffing him and, subsequently, transporting him from one cell block to another.  The dispositive question, of course, is whether that force was constitutionally excessive.  In support of their assertion that they did not use excessive force, defendants point out that Kargbo suffered, at most, only minor injuries during the course of the incident - a fact from which defendants say one might reasonably infer that the level of force used against him was comparatively slight. But, as defendants themselves acknowledge, the Supreme Court has

9

made it clear that an inmate need not suffer substantial injury in order to pursue a viable excessive force claim.

> [T]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur. In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it.

McMillian, 503 U.S. at 7 (citations and punctuation omitted). See also Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

Like the plaintiff in McMillian, Kargbo asserts that he was the victim of an unprovoked, gratuitous attack by corrections officers while he was restrained in handcuffs and leg irons. While Kargbo's memory and, therefore, his credibility is somewhat suspect, see, e.g., Kargbo deposition at 243-244 (acknowledging

10

memory problems due to his mental health issues and medications), a jury may credit his version of the events that evening, and may determine that his constitutional rights were violated.

Given the existence of genuinely disputed material facts, the court cannot conclude that defendants are entitled to judgment as a matter of law. Nor can it conclude that they are entitled to the protections afforded by qualified immunity. At the time of the events in question, it was, of course, clearly established that corrections officers cannot gratuitously beat a restrained inmate when he is (as Kargo claims) complying with their legitimate directives and offering no resistance. See, e.g., Wilkins, 559 U.S. at 38. See also Vosburgh v. Bourassa, 2008 WL 3166387, 2008 DNH 133 (D.N.H. Aug. 5, 2008) (noting that the malicious and sadistic use of force is always violative of clearly established law, so qualified immunity is rarely available when the parties genuinely dispute whether such force was applied).

## Conclusion

For the foregoing reasons, defendants' motion for summary judgment (document no. 85) is granted in part, and denied in part. As to Kargo's claims arising out of the incident on November 6, 2010, defendants are entitled to judgment as a matter

11

of law.  But, Kargbo's claim that he was the victim of constitutionally excessive force on September 30, 2011, does not lend itself to resolution as a matter of law - a jury, not the court, must decide who's version of the events that unfolded that evening is accurate.  That factual finding will determine whether one or more of the remaining defendants is liable to Kargbo.

Defendants' motion to strike Kargbo's deposition errata sheet (document no. 87) is granted, largely for the reasons set forth by defendants.  In short, the Federal Rules of Civil Procedure authorize a deponent to review the transcript of his or her testimony and make "changes in form or substance."  Fed. R. Civ. P. 30(e).  Plaintiff's effort to supplement his deposition testimony with a rambling discussion of various topics of his choosing (which are frequently non-responsive to the questions posed to him during his deposition) does not comply with the requirements of that rule.

**SO ORDERED.**

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　Steven J. McAuliffe
　　　　　　　　　　　　　　　　United States District Judge

December 13, 2013

cc:　David W. Ruoff, Esq.
　　　John A. Curran, Esq.